UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEREMY L. OLSEN,

    Plaintiff,

v.                                      Case No. 1:22-cv-724
                                       Hon. Paul L. Maloney

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his claim for disability insurance benefits (DIB).

       Plaintiff filed an application for DIB on September 16, 2018, alleging a disability onset date of May 11, 2015.  PageID.37.  Plaintiff identified his disabling conditions as suicidal, depression, closed head injury, degeneration of spine/back injury, chronic migraines, severe chronic back pain, chronic arthritis of neck and shoulders, severe anxiety, learning disability from closed head injury, and short-term memory loss.  PageID.389.  Plaintiff completed the 12th grade and has past relevant work as an electronics assembler and a production machine tender.  PageID.54, 390.  An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 28, 2021.  PageID.37-56.  This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's claim failed at the fourth step of the evaluation.[1] At the first step, the ALJ found that plaintiff did not engage in substantial gainful activity from his alleged onset date of May 11, 2015, through his date last insured of December 31, 2020. PageID.40. At the second step, the ALJ found that through the date last insured, plaintiff had severe impairments of: degenerative disc disease of the lumbar and cervical spine, degenerative joint disease of the bilateral shoulders, obesity, neurocognitive disorder status post traumatic brain injury, affective disorder, somatoform disorder, and anxiety disorder. *Id*. At the third step, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.41.

The ALJ decided at the fourth step that:

---

[1] At step four, the ALJ found that, through the date last insured, the claimant was capable of performing his past relevant work as a production machine tender. PageID.53-54. At that point, plaintiff was determined to be not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv). However, the ALJ proceeded to step five where she made an alternative finding that there were other jobs that existed in significant numbers in the national economy that plaintiff also could have performed. PageID.54. The Court finds no authority for an ALJ to make such an alternative determination. Here, the ALJ was required to end the evaluation at step four and find that plaintiff was not disabled:

> (4) *The five-step sequential evaluation process*. The sequential evaluation process is a series of five 'steps' that we follow in a set order. See paragraph (h) of this section for an exception to this rule. **If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step.** If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps. These are the five steps we follow: . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. **If you can still do your past relevant work, we will find that you are not disabled.** See paragraphs (f) and (h) of this section and § 404.1560(b).

20 C.F.R. § 404.1520(a)(4)(iv) (emphasis added). *See, e.g., Patricia T. v. Kijakazi*, No. 21-CV-1028 (GMH), 2022 WL 3583634 at *2, fn. 5 (D.D.C. Aug. 22, 2022) ("If the claimant can perform his or her past relevant work, a finding of 'not disabled' is required.") (citing 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv)). Because the ALJ's alternative determination at step five is not authorized by the regulations, the Court will not address that finding.

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he may never climb ladders, ropes, or scaffolds; may occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; and has no balance limitations. Claimant requires a sit/stand option that allows him to change from sitting to standing or from standing to sitting every sixty minutes. Claimant can tolerate frequent, as opposed to constant, exposure to moving machinery and unprotected heights. Claimant can understand, remember, and apply information to perform simple tasks and make simple decisions, can focus on and timely complete simple tasks, and can adapt to routine changes in the workplace. Claimant may do no work with money/monetary transactions or with cash. Claimant may have occasional interactions with coworkers and the public.

PageID.45.  The ALJ also found that,

> Through the date last insured, the claimant was capable of performing past relevant work as a Production Machine Tender. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

PageID.53-54.  Accordingly, the ALJ determined that plaintiff was not under a disability, as defined in the Social Security Act, at any time from May 11, 2015 (the alleged onset date) through December 31, 2020 (the date last insured).  PageID.55.

### III.    DISCUSSION

**A. The ALJ's residual functional capacity (RFC) is contrary to law and not supported by substantial evidence, because it is based on a defective analysis of the medical opinion evidence and the record generally.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments.  *See* 20 C.F.R. § 404.1545.  It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).  In determining the RFC, the ALJ considers impairments that are both "severe" and "not severe", *see* 20 C.F.R. § 404.1545,

5

"based on all the relevant medical and other evidence in [the claimant's] case record," 20 C.F.R. § 404.1520(e).

### 1. Dr. Bertram's opinions

The gist of plaintiff's claim is that the ALJ did not properly evaluate Dr. David Bertram's August 6, 2020 opinions (Exh. B7, PageID.1335-1343). Dr. Bertram provided the following summary of plaintiff's examination:

> Jeremy Michael Olsen is a 40-year-old male who was referred for neuropsychological evaluation in the context of memory concerns. He reportedly has a history of traumatic brain Injury over 20 years ago, and noted that he experienced significant cognitive, behavioral, and personality changes following that injury. On formal testing, he demonstrated clear cognitive deficits with processing speed, aspects of executive functioning, variability with memory, and consistently lateralized cognitive and motor deficits. There is also report of functional limitations such that he relies on others to manage his finances. He presently satisfies diagnostic criteria for a **major neurocognitive disorder**. He Is also reporting significant symptoms of depression and anxiety.

PageID.1340-1341 (emphasis in original).

The doctor proposed seven "recommendations." The following recommendations relate plaintiff's ability to perform work related activities:

> 1. From a neuropsychological standpoint, the patient's performance does not appear to indicate he currently lacks the cognitive faculties for independent living or independent decision-making. However, due to his cognitive deficits as detailed above, it may be beneficial for the patient to receive compensatory supports to mitigate any potential negative impact of his cognitive limitations. Such supports could include receiving regular check ins with IADL management, continuing to have a trusted other assist with financial management, and reviewing important decisions with trusted others to ensure he has appropriately organized and accounted for important available information.
>
> 2. Due to deficits with speed of information processing, the patient is encouraged to allow additional time to complete tasks. Further, minimizing distractions and attempting to complete tasks in a sequential fashion may be beneficial.
>
> 3. Due to the patient's executive-based cognitive deficits, he will likely have difficulty switching back and forth between multiple tasks or topics of conversation. He also demonstrated evidence of difficulty with novel problem-

> solving and cognitive set shifting. He will likely best work with concrete, well-organized information, rather than novel information he must independently organized [sic]. He is encouraged to maintain a consistent daily routine. Further, his executive-based cognitive deficits indicate the patient will likely be prone to using narrow, perseverative approaches when attempting to solve problems. Consultation with trusted others may improve the quality of his problem-solving efforts.
>
> 4. With regard to his memory, the patient demonstrated clear positive benefit from the aid of structure/meaning during testing. As such, he is encouraged to utilize memory and organizational supports such as calendars and lists. Any such assistive devices are typically of greatest benefit if they are placed in familiar locations that are easily and routinely accessible. Further, he is encouraged to place commonly used items in the same location, and he may benefit from applying labels to drawers/bins. . . .

PageID.1341.

### 2. Legal standard

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a).

> In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

7

> 20 C.F.R. § 404.1520c(b)(2).

*Buck v. Commissioner of Social Security*, No. 1:21-cv-883, 2023 WL 2674194 at *3-4 (W.D. Mich. March 29, 2023).

> The regulations explain "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The regulations explain "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

*Id*. at *4, fn. 2.

> If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted).
>
> In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id*. "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id*.

*Id*. at *4.

### 3. Discussion

Here, the ALJ addressed Dr. Bertram's opinions as follows:

> In discussing the medical evidence, I first reiterate that the claimant must establish disability on or before his date last insured of December 31, 2020 in order to be entitled to a period of disability and disability insurance benefits. . . .

8

>        Claimant presented to David Bertram, Psy.D., in August 2020 for a neuropsychological evaluation. He reported continued memory loss, difficulty concentrating, aphasia and impaired processing time, depression and anxiety, and other behavioral and cognitive concerns following his remote TBI [traumatic brain injury]. Dr. Bertram noted pleasant and cooperative behavior, intact speech with no word-finding difficulty, logical and organized thought processes, intact concentration, and normal mood and affect. Claimant was observed "to demonstrate cautionary findings on performance validity testing;" but the results of testing were overall determined to be reflective of the claimant's mental and cognitive status. Claimant presented with cognitive deficits particularly in visual memory, information processing, mental flexibility, right-left hemisphere functioning, and motor-based testing; but Dr. Bertram also noted "adequate initial learning on both verbal memory tasks [with] a fully appropriate ability to encode, store, and retrieve that information after a delay" but with less success when the verbal structure was removed. Dr. Bertram noted that claimant's neurocognitive disorder and resulting cognitive functioning were also likely impacted by his course of medication, as well as his depression and anxiety (Ex. B7F). . . .
>
>        In August 2020, David Bertram, Psy.D., provided a neuropsychological evaluation of the claimant. Dr. Bertram opined that claimant would need assistance with financial issues, and would likely experience difficulty with multitasking or with multiple conversations, and should minimize distractions. Dr. Bertram opined that claimant would work best with "concrete, well organized information rather than novel information that he has to organize." Dr. Bertram opined that claimant could handle independent living and decision-making, and should have additional time to complete tasks (Ex. B7F). I find this opinion at least somewhat persuasive, in that it is at least partially consistent with the medical evidence and the record as a whole, including the claimant's history of treatment and medications, the mental status examination findings, and the claimant's reported activities of daily living. The evidence supports a finding that the claimant experiences limitations due to his mental impairments but that he can perform simple and routine tasks with the additional limitations as provided herein, given overall mild to moderate mental status examination findings. Furthermore, a limitation regarding monetary transactions is supported by the claimant's neurocognitive difficulties post brain injury, and this opinion is illustrative of the need for limited interactions given potential for distraction in conversations (Exs. B8F/14-16, 23-26; B2F/37; Hearing Testimony).

PageID.51-52.

The Court cannot perform a meaningful judicial review of the ALJ's evaluation of Dr. Bertram's opinion because the evaluation lacks specificity. *See Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985) ("It is more than merely 'helpful' for the

ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.").

Here, the ALJ referred to the following opinions from Dr. Bertram: that plaintiff would need assistance with financial issues; that plaintiff would likely experience difficulty with multitasking or with multiple conversations; that plaintiff should minimize distractions; that plaintiff would work best with "concrete, well organized information rather than novel information that he has to organize;" that plaintiff could handle independent living and decision-making; and, that plaintiff should have additional time to complete tasks. PageID.51-52. While the ALJ refers Dr. Bertram's opinions as "at least somewhat persuasive," she does not address which opinions or what she means by "at least somewhat persuasive." Nor does the ALJ explain the finding that Dr. Bertram's opinions are "at least partially consistent" with the evidence. In this regard, the ALJ does not explain how Dr. Bertram's limitations are supported by "the medical evidence and the record as a whole, including the claimant's history of treatment and medications, the mental status examination findings, and the claimant's reported activities of daily living."

In addition, the ALJ does not identify plaintiff's "overall mild to moderate mental status examination findings" which support the RFC determination that plaintiff can perform "simple and routine tasks." Dr. Bertram's testing indicated that plaintiff has significant limitations. The doctor's summary identified a "major cognitive disorder" and the body of his report referred to a number of "below average" or "exceptionally below average" test results including: plaintiff's below average range performance on intellectual functioning; plaintiff's low average to exceptionally low average range performance on attention/speed of information processing; plaintiff's exceptionally low range performance on a letter-based rapid word generation task; plaintiff's exceptionally low range performance on a category-based rapid work generation task;

10

and, plaintiff's exceptionally low range performance on a task involving mental flexibility. PageID.1338-1339.  In this regard, Dr. Bertram indicated that that plaintiff may not be able to tell time using an analog clock, stating that plaintiff's spontaneous production of a clock "was notable for a reversal of the length of the clock hands."  PageID.1339.  For all of these reasons, the ALJ's decision should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Commissioner should re-evaluate Dr. Bertram's opinions pursuant to 20 C.F.R. § 404.1520c.

> **B.  The ALJ's credibility assessment is generally defective because of the above error, and specifically so because she neglected to consider Plaintiff's stellar work history.**

While plaintiff frames the issue as one of "credibility," that term has been eliminated from Social Security Administration (SSA) policy.  *See* SSR 16-3p, 2017 WL 5180304 at *2 ("we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term"). As reflected in the second claim of error, the gist of plaintiff's claim is that the ALJ failed to address his "his stellar work history, demonstrating an uninterrupted 16-year work history prior to alleging disability."  Plaintiff's Brief (ECF No. 10, PageID.1572). The regulations provide that in evaluating the intensity and persistence of a claimant's symptoms, "[w]e will consider all of the evidence presented, including information about your prior work record." *See* 20 C.F.R. § 404.1529(c)(3).  At the administrative hearing, the ALJ developed plaintiff's employment history at Biotech and Gentex.  *See* Testimony (PageID.102-106)[2].  While the decision did not discuss plaintiff's work record in detail, "an ALJ is not required to explicitly

---

[2] The Court notes that plaintiff made a variety of statements with respect to why he left his work at Gentex in 2015. Plaintiff testified that he was fired from his job for missing work due to migraines.  PageID.104-105.  Plaintiff also testified that he had problems with anger ("a few times that the anger got away from me at work and just they add up in [INAUDIBLE] and then they get rid of you" (PageID.106)) and that he "used to break mirrors all the time" and "was always getting written up for dropping glass" while assembling automobile mirrors (PageID.106).

11

discuss a claimant's work history." *Hatfield v. Commissioner of Social Security*, No. 1:21-cv-342, 2022 WL 4363902 at *5 (W.D. Mich. Sept. 21, 2022) (citing *Dutkiewicz v. Commissioner of Social Security*, 663 Fed. Appx. 430, 433 (6th Cir. 2016)). *See O'Toole v. Saul*, No. 2:18-CV-121, 2020 WL 1042292 at *6 (Feb. 5, 2020), *R&R adopted*, 2020 WL 1046698 (S.D. Ga. March 3, 2020) ("Although Regulations require an ALJ to consider all of the evidence, including prior work history, in formulating a residual functional capacity, nothing requires an ALJ to explicitly discuss that work history as part of a subjective symptom evaluation.") (citing 20 C.F.R. § 404.1529). *See also, Joseph v. Commissioner of Social Security*, 741 Fed. Appx. 306, 312 (6th Cir. 2018) (a claimant's work history "is just one factor among many, and it is not dispositive"); *Sadger v. Commissioner of Social Security*, No. 2:20-CV-11900, 2021 WL 4784271 at *12 (Aug. 23, 2021), *R&R adopted*, 2021 WL 4316852 (E.D. Mich. Sept. 23, 2021) ("an ALJ's narrative need not explicitly discuss each of the seven factors identified in 20 C.F.R. § 404.1529(c)(3)"). Accordingly, this claim of error should be denied.

### IV.    RECOMMENDATION

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Bertram's August 6, 2020 opinion pursuant to 20 C.F.R. § 404.1520c.

Dated: July 3, 2023                                              /s/ Ray Kent
                                                                                         RAY KENT
                                                                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).